Case No. 11-1466 at Elm, Salem Hospital Corporation Doing business at Memorial Hospital of Salem County Petitioner v. National Labor Relations Board Ms. Cassetta for the petitioner, Ms. Isbell for the respondent Ms. Cassetta, good morning. Good morning, Your Honors. May it please the Court, Kaitlin Cassetta representing Salem Hospital Corporation. The case before Your Honors today represents a case in which the National Labor Relations Board abused its discretion in making several erroneous procedural decisions throughout the underlying case. Those decisions prejudiced the hospital's presentation of its case and resulted in the certification of a bargaining unit that would have included and would include if it upheld supervisory employees of the hospital. And for those reasons, this Court should remand the case to the Board so that it can reconsider its rulings. I'd like to use my time today to discuss three of those erroneous rulings. First, the hearing officer's premature closure of the representation case proceeding. Second, the Board's granting of the union's unauthorized special appeal. And third, the Board's refusal to hear as an affirmative defense the hospital's claim of supervisory pain. Can I interrupt? You're not on the brief. Are you with Mr. Carmody? Yes, I am. Okay. Yes. Logically, the first of those arguments would be the representation case proceeding being prematurely closed by the hearing officer. There, the hospital sought to introduce evidence in the form of testimony of registered nurses and house supervisors who are employees of the hospital. Their testimony would have had direct bearing on the evidence that the regional director considered in issuing her decision in direction of election. And that evidence could have weighed, would be our position, would have weighed in favor of a finding of supervisory status. The Board's case handling manual and rules and regulations require the Board to develop a complete record. In fact, the representation manual that the Board follows and its hearing officers follow actually literally states that hearing officers should turn to the two parties before the close of a hearing and ask if there's any other evidence that they would like to present. In the case at Barr, not only did that not take place, in fact, the hospital requested the opportunity to put on additional evidence, and it was foreclosed from doing so. What proffer was then made that showed, what proffer was made that showed how that evidence, had you put it on, would have changed or would have had at least increased the chance of that regional director changing? The offer of proof that the hospital made at the request of the hearing officer is in the appendix at A535, or 533 to 535. And in it, counsel for the hospital explicitly references the house supervisors in the need, in light of evidence elicited by the union during the R case hearing to that point in time, to put on the house supervisors to explain their duties and also to explain theological position being taken during testimony by the charges. What you said is that you're going to put on, we need to put it on to show that just because there might be a house supervisor on duty doesn't mean there aren't other supervisors. Beyond that, I don't see anything that would have changed what it was in the regional, what the regional director relied on in finding supervisory status. Well, the other supervisors would have been the charge nurses working at night. The regional director didn't really rely on this whole house supervisor issue at all. Well, we don't know, we don't know what the regional director would have relied upon had the record been completed. But I think, I think it shows that, well that's what I'm asking, that's the question I'm asking you. So it shows that the union evidence about the house supervisors didn't really play in the regional director's mind, as it was on this record. Now, if you had some killer new evidence that would have changed all the things the regional director did rely on, that's what I'm asking for a proffer of. Not just that we would like to respond to what the union said, but here's the killer evidence we had that would have changed what the regional director did rely on. That's how you have to show prejudice from a procedural error. And I think the killer new evidence would have been testimony from the house supervisor themselves about the procedures that are followed on the off shifts. We're talking about night shifts and weekend shifts. During those periods of time, the house supervisors, the next person down in the supervisory chain is the charge nurse. The offer of proof says we want to put on evidence because there's testimony in the record that the charge nurses don't consider themselves supervisors at night. There was, by the way, also evidence in the record from the hospital's directors and managers that said there are supervisory procedures that the charge nurses are responsible for. There's just no other proffer other than what you're showing, what's on 535. Is that the full extent of the proffer? I think I would point you to... Because originally it was even worse than that, right? I'm sorry? 533 just said it would concern the testimony of the union's witnesses. So that's when we asked for an offer of proof. And that's all that was said, right? That's the initial response. Initial response. And then the guy rules. And so then we get this. I'm asking you to reconsider. So actually your offer of proof consists of it would concern the testimony of union witnesses and embellishment of that position and testimony on page 533. Then the hearing officer says, no, I'm not letting it in. And then you say, I'd like you to reconsider. And all we get then is it would show that there could be more than one supervisor. Right. And those other supervisors would have been the charge. The evidence would have shown, and the evidence to that point in the record indicated that the next person down in the chain would have been the charge nurses. So that, I think, can be adduced. The hearing officer would have been able to adduce that. But I want to take a moment. Okay, but there's no other writing or anything else that was put in to show what the evidence would have been had you put it in. No, this is the offer of proof. I think it's specific as to charge nurses. I think it's sufficiently specific because there is no burden on the hospital to present in this, our case hearing, a very perfected offer of proof. The burden is on the board to complete a full, create and collect a full record of the evidence. And the prejudice results from the fact that the regional director and her decision and direction of election says, I can't find supervisory status for two reasons. First, there's not sufficient evidence. Well, obviously, we sought to put in more evidence that would have formed directly on supervisory status. And second, there are conflicts in the evidence. And the regional director cites precedent that says when there's a conflict in the evidence, I can't find supervisory status. Well, if you had taken the additional information that would have been elicited by the hospital regarding supervisory status on nights and weekends, then there wouldn't necessarily have been that conflict in the evidence. So the prejudice is clear. I want to- Because I assume you do these procedures, these types of proceedings. You've done these before? Yes. Right. Is it when the hearing officer asks for an offer of proof, is that pretty common? It depends on the proceeding, but certainly offers of proof, depending on the different context of the litigation when they come up, and certainly they're common. But unorthodox in a representation case hearing may be unorthodox because the burden is on the board to complete a full record. There really shouldn't be the board saying, well, what's the point of the evidence? The board has the duty, the obligation set forth by its own rules and regulations and case handling manual to complete that full record. I want to contrast that with the board's approach in the testing of cert proceeding that underlies the board's decision in this case. Therein, the board refused to take evidence on the hospital's affirmative defense of supervisory taint, which, as you probably know from the record, would rely upon some of the same supervisory assertions. The board's refusal to do that flies in the face of its own precedent in the form of Reese M. Garib doing business at South Alabama Plumbing. In that case, the board holds that an employer or a petitioner is entitled to put on evidence of an affirmative defense, even if it is indeed the case that the same claim was made in the context of a charge and was dismissed by the general counsel. Here we have precisely that set of circumstances. The board has not addressed why it didn't follow its own precedent. It's never even mentioned the citation, despite our repeated citations to it. And we should have had the opportunity to prove supervisory taint as an affirmative defense. That was necessary for the completion of the ULP proceedings. The board's reliance on the idea that supervisory taint was previously litigated is not only contrary to South Alabama Plumbing, but it also is not supported by the differences in our case hearing and the ULP hearing. And that's supported by the record. The ULP hearing does allow for rebuttal. Very clearly, all the parties acknowledge that. And in our case hearing, that was explicitly foreclosed on the idea that it was rebuttal. We think it was wrong that it was foreclosed in our case hearing, but certainly it should have been allowed as part of the ULP proceedings. Are house supervisors registered nurses? They could be. I don't know. I can't say for certain that they always are, but often they are. Are they sometimes not nurses at all? I couldn't say with certainty. I mean, for one thing, we don't have any house supervisor testimony in the record to elicit what their role would be and whether they have to be registered nurses. Well, they're your employees, right? You must know what their house supervisors are. I'm sorry? They're your employees, right? Salem Hospital employees. They are Salem Hospital employees. So you must know what they are. I just don't know that I could say that they always have to have an active registered nurse certification or not. And was this election conducted pursuant to a stipulated election agreement? No. And that's why there is a board rule that would apply to the boards. There's a special appeal that the board took, and I'd like to take a moment, even though my time is about to expire, has just expired, to discuss that special appeal. The board granted, in part, the union's special appeal, which was filed 36 days after the regional director's hearing on objections issued and seven days before the hearing was to take place, despite the fact that the board had no authority, despite the fact that the union submitted bad authority in the form of a board rule that didn't apply, and despite the fact that the special appeal was clearly untimely. This one more time foreclosed the hospital from the opportunity to litigate the supervisory status of the charged nurses. And, again, the prejudice is clear. A bargaining unit cannot exist that has the hospital's own supervisors in it. For all three of those reasons, standing independently and also taken together, it is necessary for this court to remand this case to the board so that they can comply with their precedent, comply with their rules and regulations, and give the hospital the opportunity it deserves to litigate supervisory status. Thank you. All right. Ms. Isbell. Thank you, and may it please the court, Kelly Isbell here on behalf of the National Labor Relations Board. Salem had ample opportunity to present its evidence to the National Labor Relations Board. It had no opportunity to respond to the evidence that came in from the union, none whatsoever. No, I'm sorry. It had no opportunity to respond. The union got to respond to its evidence because Salem went first. And the union got to put on its affirmative case and respond to what Salem did, but Salem never had any chance whatsoever to address the evidence that the union put on. And the answer seems to be, well, you should have been prescient enough to know what they were going to say and put that on in your affirmative case. Is that normally how these records are created? In a representation case hearing, those hearings are non-adversarial. The company, the employer goes first, puts on evidence. The union goes next, puts on evidence. As he did here, the hearing officer often asks, are we done, or does anyone have more evidence? An offer of proof is not unorthodox in the representation case hearing. No, but is letting someone then, if someone goes, yeah, yeah, yeah, I'd like to put in some evidence, you know, they raised this new issue, it hadn't been in the case before, I would like to address it. Do hearing officers routinely say no or yes? If that is, in fact, what Salem had said, the hearing officer might well have allowed it in. What Salem said was that they wanted to put on evidence of the house supervisor's duties and whether they were, in fact, the highest-ranking employee at the hospital on nights and weekends. Salem's own witnesses had testified to that fact, as well as the union's witnesses. Well, they said, I'm on 535, we need an opportunity to show that house supervisors don't supervise all the other people in the hospital. That's not an issue we put on our case. It's an issue that she, meaning the union attorney, created. And that is not an issue that actually goes to the supervisory status of the charge nurses. If there's, in fact, a maintenance supervisor on duty overnight at the hospital, the fact that there is another supervisor at the hospital doesn't go to establish the supervisory duties of the charge nurses. Well, that's what they wanted to show, was I want to make clear, because these folks can sometimes be nurses, and make clear that just because we have a supervisor there doesn't mean that the registered nurses or the charge nurses wouldn't also be supervisors. This is a whole new theory the union brings up. We would like a chance to respond to it. But that was not the union's theory. The union's theory was that the charge nurses themselves are not supervisors, that house supervisors, whether or not they are supervisors, doesn't necessarily affect the status of the – my supervisor also has a supervisor. That does not make my supervisor not a supervisor. Well, they wanted to probe this. Who had what responsibilities? And they certainly took from this the implication that house supervisors, they're there. You don't need charge nurses to also be supervisors within the meaning of the National Labor Relations Act. I don't know why the hearing officer wouldn't just let them respond to evidence they'd never had a chance to address. That doesn't seem to fit the role of letting in all relevant evidence. Because their witnesses and the union's witnesses said exactly the same thing about the house supervisors. Salem's own witnesses said the house supervisors are the highest-ranking people at the hospital when they are serving. That's on Joint Appendix – I believe I wrote it down. I can't remember where I wrote it down. It's in the Joint Appendix. Their witnesses said – No, I get that, but they want to say, yeah, sure, that's your point exactly. Yeah, there's the big supervisor, but the charge nurses are the next layer of supervisor, just like you said. There's a supervisor of a supervisor. And you have to show that the charge nurses actually have some supervisory duty. Do they assign? Do they direct? Do they hire? Do they fire? Do they adjust grievances? Do they reward? Do they punish? There was no evidence – the regional director found that under Kentucky River and Oakwood Health Care, the charge nurses did not exercise one of those 11 enumerated duties of statutory supervisors. Whether the house supervisors who were stipulated supervisors – Salem agreed they're supervisors. There was no question that they were supervisors. Whether the house supervisors, in fact, were supervisors was not relevant. The issue was whether the charge nurses assigned or directed, and that was not shown. Salem put on – But was it two instances? In the surgical unit, there were two charge nurses. Yes, and the regional director found – And their duties were significantly different from the other charge nurses in the other units. Yes, Your Honor. The regional director found, on the basis of evidence provided by Salem, that those two nurses were, in fact, supervisors. The charge nurses – Salem's witnesses testified that the charge nurses, when they bring in – Patients, since this changes, sometimes you have to call in more nurses. Salem's own witnesses testified that you have to run that by the house supervisors. Some of Salem's witnesses said you don't have to get the permission, but you have to tell them. Some of them said you had to get the permission. All of the charge nurses said you have to get their permission. This is the evidence that was presented that the regional director relied upon. It's based on evidence that was presented by Salem and evidence that was presented by the union. Whether or not – What exactly were the duties of the house supervisor, whether they were supervisors at night, doesn't address the question of whether the charge nurses themselves assigned, directed. When you have these proceedings, is it anything like – does the court – do people know in advance who's calling which witness and sort of a quick summary of what that witness is anticipated to testify to? At the representation case proceedings, I'm not sure that they actually do know that. All right. So no one would – Salem, put it on its case, wouldn't presumably know what the union's going to say, and the union wouldn't know what Salem's going to say until they're in the hearing room there. I can't answer that question fully because I am just an appellate attorney. I know that they all have pre-hearing conferences and they discuss things, but I have never been in one of those pre-hearing conferences. But if – it's not like discovery where you have a list of witnesses and you know exactly what's going to happen. Can I get your position straight that when the regional director said that house supervisors are responsible for everything that happens at the hospital during the evening and overnight hours, during the week and on weekends, when they are generally the highest-ranking officials on site, did you say that both Salem and the union presented witnesses to that? What did you say supports that?  They are the highest-ranking people at the hospital overnight and on weekends. In the organizational charts in the joint appendix, they are lateral to the unit directors. Unit directors are the folks who run the surgical unit or run the emergency department unit. So they're lateral to those people. Joint appendix 325 and 344. It was in pencil, which is why I didn't see it. So joint appendix 325 and 344 are the pages where Salem's witnesses were testifying that the house supervisor is the highest-ranking people. What pages? 325 and 344, joint appendix. Are you doing a dash between those or just on those two pages? I just looked at two of them, so it's 325, 344. Their witnesses also testified on pages 183 to 184 that you have to call the house supervisor before you can call in other nurses. So the charge nurse who's there, you get extra patients, you need another RN based on your published patient census. Can you call someone in? At least one of Salem's witnesses said, yes, you have to talk to the house supervisor before you can. Are the house supervisors RNs? I don't know. It's not in the record. They are, at least in the organizational level, at the same level as the RNs who run the medical surgical department, the surgical services department. When they talk on 325, is the shift supervisor the same as the house supervisor? Yes, Your Honor. It's not called that there, okay. Yes. Can you talk a little bit about the appeal issue? Yes. Okay. Where did the board explain, the original director explain, the board, sorry, explain why this is an appropriate case and why it's timely and why they couldn't bother to wait for the hospital's response before making their appeal decision? Well, in this situation, the board, the union brought the special appeal, notifying the board that 16 of the company's objectives were the same. Where did the board explain? Did it ever explain why it granted this appeal? Yes. It explains that it granted the appeal because it had already decided Objections 136. Asked and answered, right, was sort of the rationale. Where did they explain that 36 days is timely and asked and answered is a sufficient basis, an appropriate case, anytime someone says we already decided that that's an appropriate case for this special appeal and so appropriate we don't even need to wait for the other side to file a response? It did not go into that level of detail. It didn't answer those concerns at all. Well, it did tell the union that it was granting the appeal because it had, in fact, answered those questions. And on the basis of efficiency of the board, there was no reason to go back and look at supervisory status or supervisory taint when the original director had affirmed by the board and found that the charge nurses were, in fact, supervisors. Is it common for them to make these special decisions without waiting for the other side to even file a brief, a response? In cases like this where the, I don't know that it's common, but in cases like this where it's obvious that they've already decided all the issues and objections 1 through 16, I don't think it would be unusual. I'm sorry, I bet you had a lot of negatives in there. It's common for them not to wait for, or not uncommon for them to go ahead and decide this without even waiting to hear from the other party? In the board's rules, there is not an explicit, under the rule that allow for the special appeal, which is 29 CFR 10265C. There is not an explicit allowance for a response. So I don't know that it's common for the board not to wait for a response. So the board has procedures where someone gets to file something, the other side doesn't even get to respond before it's decided, really? In the special appeal in a representation case decision, if they had filed a response, if the timing had worked out and the board had not issued its order, the board, of course, would have looked at their response. But there's no specific allowance. Because it was obvious that the board had already... And when you said it's not uncommon, so does that mean you have some instances you could cite to us in which they've done the same thing? No, Your Honor, I don't know that it's common or uncommon, I just know it's allowed. You've never seen it before? I have not seen it before. Okay, and what do they mean by timely? Have they ever done cases that explain what it means to be timely or not? Not that I know, Your Honor. So they have legal standards here for these appeals, and have their cases explained appropriate? Have they elsewhere ruled that appropriate includes the sort of ask and answer argument that they made here? I know that the board does not normally set for hearing questions that have already been answered in a pre-election hearing. The board would not, after, in objections, the board would never hear a question. That might very well be, but when do they normally yank it out of a regional director who said, I think I need a hearing like this? This is very different, right? They yanked it out of the regional director's hands after the regional director said, I need a hearing. Yes, they did. 36 days in without any explanation, without waiting for the other side to respond. With an explanation that the questions had been asked and answered. So I do think the board answered the question. Okay, but you don't have any other situation where they relied on that same rationale for a special appeal? Off the top of my head, I do not. But I do not think it is unprecedented. But I do not off the top of my head. When you don't think it's unprecedented, you think there may be cases like that. There may, in fact. They would probably be unpublished cases, because these are not ULP cases. They would be board orders that are not published. So how can I know if there have been more, how can I know if, in fact, this has happened before? This is one of the, there may be lots of reasons they consider it inappropriate to have a special appeal. How would I know that they have considered this sort of asked and answered to be an appropriate basis to take an appeal away from a regional director, a case away from a regional director? I could try to find out for you. But under the board's procedures, the time for election objections and election objections hearings do not include issues that have been settled at a representation hearing. They just never do. I guess I'm just trying to, so the board may not do it, but wasn't the regional director? And so the board's the one that said, no, regional director, you can't hear this? It's not the same thing as saying the board itself. If the regional director had had the hearing and said, you know what? Thank you. We've come to a conclusion here. We're done. And then they tried to appeal that to the board, and the board would go, please, how many times do we need to relitigate the same issue? We're not going to entertain it. Isn't that different from what happened here? Once the notice of hearing on objections is issued, that transfers the case to the board. So the case is before the board and is heard by an administrative law judge who is under the board's organizational structure. So that part always goes to the board. No, to the ALJ. To the ALJ who is under the board. Which then goes to the board after the ALJ, I assume. Yes. Okay. Even if one thought that there wasn't sufficient justification by the agency for this decision, what remedy would there be? They could have filed. Now in a court, what would the remedy be? Now in a court, not much. I mean, they could have filed papers with the board asking for the board to do it. Actually, I think they did file papers with the board. They filed a motion for reconsideration of the board's decision, and the board denied. So they did ask the board to reconsider its decision to grant the union special appeal, and the board considered that and denied their motion for reconsideration. Here, these kind of decisions are up to the board's discretion. The standard of review is very deferential on procedural rulings by the board. All right. Thank you. Does Mr. Saito have any time? Why don't you take a couple minutes? On a brief rebuttal, I'd like to make one point addressing the premature closure of the record and one point addressing the special appeal. With regard to the premature closing of the record, counsel for the board insinuates that the witnesses said exactly the same thing, that the witnesses before the House supervisors who were precluded from testifying said the same thing. I'd point you to Joint Appendix A-328 and Joint Appendix A-354. On both of those pages, you have unions counsel cross-examining hospital directors. Those hospital directors have testified on their direct examination about the procedures charge nurses are required to follow during the off shift. On page 328, you have the unions attorney asking, are you aware in your absence the House supervisor has told people, charge nurses, that they may not ask additional staff to work, i.e., assignment to come into work and work? And later on that same page, the director says, I don't have any idea because I'm the director of the unit and it's my expectation that the charge nurse has that authority. And that is evidence of exactly why the House supervisor's testimony would have been so illuminating for this record, especially where the board has a duty to take all the evidence, make a complete record and weigh that evidence, and especially where the hospital was prejudiced by a conflict that was left existing in this record by the hearing officer. And that's why it's so prejudicial in error. The board's granting of the union's special appeal is similarly prejudicial. The board's counsel cites to the discretion of the board the deference worth to give to that. But abusive discretion is not to be tolerated by this court. And there's no explanation in the record below. There's no explanation here today as to why this would be allowed or if it's ever been allowed in the past. And piggybacking on that error here, the regional director errs as well because then she interjects herself back into the proceedings to dismiss Objections 1 through 16 after the board has simply said they should not be set for evidentiary hearing. And there's no explanation for why the regional director would then rely on that and she relies only on the board's order for the premise that the objections, which she's previously set for hearing, should actually be dismissed. Do you disagree that the objections 1 through 16 had already been decided? I do disagree with that. For one thing, the record was closed prematurely, which means that there were issues that were not litigated. Not that you would like to have a different record, but that the issues had been decided. Well, the standard that the board relied on was that they were previously litigated, not that they had previously been decided. And they had been decided, but erroneously, based on the fact they were not properly litigated. The common denominator here is that at every opportunity, the hospital was foreclosed from a pretty simple issue, supervisors in a bargaining unit. And the hospital requests that this court remand this case so that it has the opportunity to litigate that very important question. Thank you. Before you sit down, the hearing officer did hear from charge nurses themselves, right? Yes. And they testified that they have, in essence, I'd be kind of cumulative here, that they didn't have authority on nights and weekends. That contradicted evidence put into the record by the directors who said they do, because an 80-bed hospital cannot be run by one supervisor acting alone. The charge nurses are in the stand instead of the directors and managers of the units during those off shifts. That's what makes the evidence so important, and it's also why it's so important to the hospital that charge nurses who work weekends and are the second line of supervisors at night not be included in the bargaining unit. There's just one house supervisor, right? There's just one house supervisor. Thank you.
judges: Henderson, Millett, Wilkins